```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA            x
                                    x     06 Cr. 377 (SWK)
            -against-               x
                                    x
TOSIF SIDDIQI,                      x     OPINION AND ORDER
                                    x
            Defendant.              x
------------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

In an Opinion and Order filed on October 3, 2007, the Court granted the defendant's request for an audibility hearing to probe the intelligibility of the Government's recording of the November 22, 2004 conversation (the "November 22 Conversation") between the defendant, Tosif Siddiqi, and the Government's confidential informant ("CI"). The Court held an extended audibility hearing on October 22, 2007, receiving testimony from both the Government's interpreter and the defendant's interpreter, and listening to significant portions of the recording. For the reasons that follow, the Court concludes that the recording is admissible. The Court also holds that the defendant may introduce at trial his own interpreter's English-language transcript of the recording.

I.  BACKGROUND

On October 11, 2007, the Government submitted to the Court its final English-language transcript of the November 22 Conversation. That transcript identified dozens of points in the

conversation during which there was significant background noise, voices overlapped, and words or sentences were unintelligible. Moreover, the Government's transcript recorded a break in recording for an unknown period of time.

On the morning of October 22, 2007, immediately prior to the audibility hearing, the Court received a copy of the Government's transcript, which the defendant's interpreter had marked to denote points in the transcript that he, in contrast to the Government's interpreter, determined were unintelligible. There were dozens, if not hundreds, of such denotations.

Also on the morning of October 22, 2007, the Government submitted to the Court a list prepared by the Government interpreter, which identified as "very clearly" intelligible certain portions of the transcript that the defendant's interpreter had determined were unintelligible.

During the hearing on October 22, 2007, the Court heard testimony on the qualifications of the interpreters, as well as the methodology they had used to translate the recording at issue. The Court also reviewed, with the aid of the parties' interpreters, several portions of the Government's English-language transcript, focusing on specific lines whose audibility is in dispute. In substance, the Government's interpreter testified that she again heard what she had written in her final English-language transcript. The defendant's interpreter, on the

2

other hand, asserted that he could not decipher the relevant portions of the Government's transcript, which he had previously identified as unintelligible.

After completing the audibility hearing, the Court conducted further in camera review of the disputed portions of the Government's English-language transcript.

**II. DISCUSSION**

It is well settled that a tape recording is generally admissible "[u]nless the unintelligible portions [of the recording] are so substantial as to render the recording as a whole untrustworthy . . . ." United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973) (quoting Monroe v. United States, 234 F.2d 49, 55 (D.C. Cir. 1956)). Moreover, if a tape recording is otherwise admissible, a court should permit its introduction into evidence provided that its probative value outweighs its tendency to mislead the jury. United States v. Arango-Correa, 851 F.2d 54, 58-59 (2d Cir. 1988); Bryant, 480 F.2d at 790.

Here, the conversation captured in the Government's recording is conducted largely in the Punjabi language. The Government's interpreter concedes that various portions of the recording are unintelligible or difficult to comprehend. Moreover, the Court's independent review of the recording revealed substantial background noise and numerous instances in which the voices of the participants in the conversation

3

overlap. The participants' voices are often faint, especially when compared to the volume of other noise, including the sounds of passing traffic and chirping birds. Furthermore, the most pronounced occasions of background noise often coincide well with the portions of the Government's English-language transcript that the defendant's interpreter has identified as unintelligible, in spite of the Government interpreter's translation.[1]

These considerations notwithstanding, the Court notes that the sound of voices--however faint--can be distinguished throughout nearly all of the portions of the recording that are alleged to contain conversation.[2] Of course, the Court cannot, without the assistance of qualified interpreters, determine whether these voices are intelligible enough to facilitate English-language translation. In this regard, the parties' interpreters gave widely disparate opinions as to the audibility of significant portions of the recording. Nevertheless, because

---

[1] For example, from marker "23:19" to shortly after marker "23:55," the sound of voices is just barely audible amidst the background din of passing traffic. Moreover, between markers "27:01" and "27:38," the sound of sirens almost completely drowns out the participants' voices. On the other hand, the Court finds the sound of voices more distinct between markers "27:39" and "28:34," though the audibility of this portion of the recording is largely in dispute. The same can also be said for the disputed portions of the recording between markers "33:30" and "34:40," and "35:38" and "36:51."

[2] The parties concede that some twenty minutes of the tape recording in question contain no voices.

4

the Court can make out the sound of voices throughout the Government's recording, and given that the Government's interpreter has testified as to the intelligibility and translatability of the disputed portions of the recording, the Court finds these disputed portions audible for admissibility purposes. Cf. Arango-Correa, 851 F.2d at 58 (collecting cases acknowledging preference in favor of admission of audio recordings in face of ambiguity).

Having reached this conclusion with respect to the disputed portions of the recording, the Court holds that the recording as a whole is admissible. The concededly unintelligible portions of the transcript are not so substantial as to render the entire recording untrustworthy. Moreover, the probative value of the recording, insofar as it bears on the defendant's alleged receipt of computers and cash from the CI, outweighs its tendency to mislead the jury, which can be effectively cabined through cross-examination and adequate limiting instructions. Thus, the Court will permit the Government to introduce the recording into evidence at the defendant's trial.

As the Government's recording is largely in Punjabi, the Court will also allow the Government to introduce its final English-language transcript of the recording into evidence. See United States v. Chalarca, 95 F.3d 239, 246 (2d Cir. 1996); United States v. Bahadar, 954 F.2d 821, 829-30 (2d Cir. 1992).

If the defendant continues to dispute the Government's translation, the Court will permit him to introduce his own translation of the recording as well. United States v. Ben-Shimon, 249 F.3d 98, 101 (2d Cir. 2001); Chalarca, 95 F.3d at 246; United States v. Chiarizio, 525 F.2d 289, 293 (2d Cir. 1975). The Court will give the jury a "limiting instruction . . . concerning the use of transcripts, which . . . should alleviate any prejudice arising from the introduction of the transcripts." Chalarca, 95 F.3d at 246. Furthermore, the Court will allow the defendant to cross-examine the Government's interpreter concerning her qualifications and her translation of those disputed portions of the recording that are relevant to the defendant's guilt or innocence. Additionally, the defendant may raise before the jury other facts that may cast doubt on the accuracy of the Government's transcript, such as the fact that it was prepared at least in part with the aid of the CI, or the fact that the Government's interpreter prepared her English-language transcript without first transcribing the spoken words in Punjabi.

Finally, the Court will afford the defendant an opportunity to play relevant portions of the recording for the jury, so that its members can appreciate the background noise and other potential obstacles to the recording's interpretation. In granting this concession to the defendant, the Court does not

6

intend to open the doors to a second audibility hearing before the jury. Rather, the Court wishes only to allow the defendant an opportunity to convey to the jury the flavor of the recording, including its substantial background noise and overlapping voices.

### III. CONCLUSION

In summary, the Court will permit the Government to introduce into evidence its recording of the November 22 Conversation between the defendant and the CI. The Court will also permit each party to submit to the jury its own English-language transcript of the recording. The Court will give the jury an appropriate limiting instruction concerning its role as the ultimate finder of fact and the use to which it may put any English-language transcripts introduced into evidence.

SO ORDERED.

```
                              _____
                                    SHIRLEY WOHL KRAM
                              UNITED STATES DISTRICT JUDGE
```

Dated:    New York, New York
          October 23, 2007

intend to open the doors to a second audibility hearing before the jury. Rather, the Court wishes only to allow the defendant an opportunity to convey to the jury the flavor of the recording, including its substantial background noise and overlapping voices.

### III. CONCLUSION

In summary, the Court will permit the Government to introduce into evidence its recording of the November 22 Conversation between the defendant and the CI. The Court will also permit each party to submit to the jury its own English-language transcript of the recording. The Court will give the jury an appropriate limiting instruction concerning its role as the ultimate finder of fact and the use to which it may put any English-language transcripts introduced into evidence.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
October 23, 2007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/23/07